**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

RECEIVED

2009 AUG 12  A 10: 38

| | |
|---|---|
| **JERRY W. COBB, individually and On Behalf of the Qualico Steel 401k Plan and on Behalf of All Others who were Participants in the Qualico Steel 401k Plan,** ) ) ) ) ) ) ) | **CIVIL ACTION NO.** 1:09-CV-764 |
| **Plaintiff,** ) ) ) | **COMPLAINT** |
| **vs.** ) ) ) | |
| **REGIONS BANK d/b/a REGIONS MORGAN KEEGAN TRUST; QUALICO STEEL CO. INC.; and MORGAN KEEGAN & COMPANY, INC.,** ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** ) | |

Plaintiff Jerry W. Cobb ("Plaintiff"), a participant in the Qualico Steel Company, Inc. 401k Plan ("the Plan") during the proposed applicable period, alleges as follows, on behalf of the Plan, its Qualico 401k plan participants and on behalf of himself and all others similarly situated:

### INTRODUCTION

1.    This is an action brought pursuant to § 409, 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109, 1132. Against Defendants, fiduciaries of the Plan.

action on behalf of each participant in the Plan, as well as himself and all others similarly situated.

3.    During the applicable period, the Plan held interests in the Regions Morgan Keegan ("RMK") Select Intermediate Bond Fund and Select High Income Fund (collectively, the "Funds").[1]

4.    401(k) plans confer tax benefits on participating employees to incentivize saving for retirement and/or other long-term goals.

5.    An employee participating in a 401(k) plan may have the option of purchasing one or more variations of investments for his or her retirement investment portfolio.    One or more of the Funds were investment alternatives offered by the Plan during the applicable period.

6.    Plaintiff alleges that Defendants, as "fiduciaries" of the Plan (as delineated and described herein), as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached their duties to him and to the other participants and beneficiaries of the Plan in violation of ERISA §§ 404(a), 405; 29 U.S.C. §§ 1104(a), 1105, particularly with regard to the Plan's holdings of the Funds.

7.    Specifically, Plaintiff alleges in Count I that certain Defendants, each having certain responsibilities regarding the management and investment of the Plan's assets, breached their fiduciary duties to him, the Plan, its participants and proposed Class by failing to prudently and loyally manage the Plan's

---

[1] Plaintiff upon information and belief alleges that other investments and investment decisions were made by Defendants other than as strictly related to the Funds.  Therefore, for purposes hereof, wherever "the Funds" are referred to herein, such shall also include said other investments and investment decisions, which after sufficient discovery will be added and otherwise clarified by amendment hereto.

investment in the Funds as suitable investment options when it was imprudent to do so. This action/inaction runs directly counter to the express purpose of ERISA pension plans, which are designed to help provide funds for participants' retirement. *See* ERISA § 2, 29 U.S.C. § 1001 ("CONGRESSIONAL FINDINGS AND DECLARATION OF POLICY").

8.    Plaintiff alleges that Defendants failed to communicate to the Plan's participants complete and accurate information regarding the Plan's investment in the Funds sufficient enough to advise participants of the true risks of investing their retirement savings in the Funds.

9.    Plaintiff alleges that Defendants failed to avoid or ameliorate inherent conflicts of interest, which crippled their ability to function as independent, "single-minded" fiduciaries with only the Plan and their participants' best interests in mind.

10.    Plaintiff alleges that Defendants breached their fiduciary duties by failing    to    adequately    monitor    other    persons    to    whom management/administration of the Plan's assets was delegated, despite the fact that such Defendants knew or should have known that such other fiduciaries were imprudently allowing the Plan to continue offering the Funds as an investment option and investing the Plan's assets in such investment option when it was no longer prudent to do so.

11.    Plaintiff alleges that Defendants allowed the heavy imprudent investment of the Plan's assets in the Funds throughout the applicable period despite the fact that they clearly knew or should have known that such

investment was imprudent due to, as explained in detail below and among other things: (a) the true nature and extent of the risk related to the concentrated securities within the Funds; (b) that the Funds were heavily invested in illiquid and subprime structures, such as collateralized debt obligations ("CDOs"); (c) the extent to which the Funds were invested in illiquid securities; (d) that the Funds were invested in risky, new investment structures in which data was difficult to obtain; (e) that due to the Funds' illiquidity, the Funds' manager would be forced to initially sell first the liquid, lower risk assets, thereby penalizing holders of the Funds; (f) inappropriate valuation of the Funds' assets; (g) that the Funds' pre-2006 results were attributable to their concentration in these untested and imprudent investment structures; and (h) that the fact that investment of participants' retirement savings in the Funds would inevitably result in significant losses to the Plan, and consequently, to their participants.

12.    This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are liable pursuant to ERISA §§ 409, 502, 29 U.S.C. §§ 1109, 1132. Because Plaintiff's claims apply to the Plan, inclusive of all participants with accounts invested during the applicable period, and because ERISA specifically authorizes participants such as those alleged herein, Plaintiff brings this as a class action on behalf of the Plan and all participants and beneficiaries of the Plan during the proposed applicable period.

13.    The "applicable period" as referenced to herein shall mean the period of time beginning when one or more Defendants implemented measures to designate the Funds as one of the investment options available to the Plan's

participants and ending the date the Funds ceased to exist or the date hereof if still in the Plan.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

15.     Venue is proper in this district pursuant to ERISA § 502(e)(21), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary places of business in this district.

## PARTIES

### Plaintiff

16.     Plaintiff Jerry W. Cobb is a "participant" in the Plan, within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1102(7), and involuntarily held the Funds in his retirement investment portfolio during the applicable period.

### Regions

17.     Defendant Regions Bank ("Regions") is a wholly-owned subsidiary of Regions Financial Corporation which is a Delaware corporation with its principle place of business located at 1900 Fifth Avenue North, Birmingham, AL 35203. Regions Financial is the product of the November 4, 2006 merger of Regions Financial Corporation with AmSouth Bancorporation.

18.     Regions is a national bank that offers various banking and financial services in the United States.  The Company provides a range of commercial

banking services.  As of December 31, 2006, it operated approximately 2,000 full service banking offices in 16 states.  The Company also offers various brokerage and investment banking products and services, such as securities brokerage, asset management, financial planning, mutual funds, securities underwriting, sales and trading, and investment banking, as well as provides financial advisory services and other services.

19.    Upon information and belief, Regions is the trustee over the Plan while Defendant Qualico is the Plan Sponsor and Plan administrator for the Plan. Regions did and does business in the Plan in the name of Regions Morgan Keegan Trust and calls itself "non-discretionary trustee for the Plan."

20.    However, Regions exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, and was therefore a fiduciary of the Plan in its own right.  Regions acted through its employees in offering the Funds in the Plan and at times encouraging Plaintiff and Plan participants to choose the Funds over other options in their 401k accounts.  Further, Regions failed as a fiduciary of the Plan in its oversight and in the Plan's administrative and/or investment committees, appointed by the Company to perform Plan-related fiduciary functions in the course and scope of their employment.

21.    Regardless of its self-proclaimed "non-discretionary" title, Regions had, at all applicable times, effective control over the plan-related activities.  By failing to properly discharge their fiduciary duties under ERISA, the Regions' employees as fiduciary agents breached duties they owed to the Plan, the

Plaintiff and its participants.    Accordingly, the actions of the employees and agents of Regions and/or any other employee fiduciaries are imputed to Regions under the doctrine of *respondeat superior*; Regions is liable for said actions.

22.    Qualico and its management and owners ("Qualico") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that they held and at times exercised discretionary authority with respect to the management and administration of the Plan and/or management and disposition of the Plan's assets.    Indicative of Qualico's authority, upon information and belief, it was ultimately responsible for monitoring and administering the Plan, appointing, monitoring and removing persons and entities charged with the operation of the Plan.  Upon information and belief, Qualico had the authority and obligation to appoint and remove other fiduciaries of the Plan, including without limitation, members of any committee charged with administration and/or investment of the Plan's assets, if necessary, in order to best serve the interests of the Plan's participants.  Plaintiff claims that Qualico breached its fiduciary duty by not timely monitoring the administration by Regions, by allowing investment advice to be given by Regions' agents and employees to the Plan participants and, upon information and belief, by not taking timely remedial measures to minimize losses to the Plan, the Plaintiff and the participants.

23.    Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan"), a subsidiary of Regions Financial, is a full-service regional brokerage and investment banking firm. Morgan Keegan offers products and services including

securities brokerage, asset management, financial planning, mutual funds, securities underwriting, sales and trading, and investment banking. Morgan Keegan also manages the delivery of trust services, which are provided pursuant to the trust powers of Regions Bank. Morgan Keegan, one of the largest investment firms in the South, employs approximately 1,300 financial advisors offering products and services from over 400 offices located in Alabama, Arkansas, Florida, Georgia, Illinois, Kentucky, Louisiana, Massachusetts, Mississippi, New York, North Carolina, South Carolina, Tennessee, Texas and Virginia. It is alleged that Morgan Keegan was the exclusive investment advisor for the Funds and engaged in a conspiracy with the remaining Defendants to place said Funds, which were inappropriate for the Plan. Morgan Keegan knew or should have known that said Funds were faulty as alleged herein but despite such aggressively participated in the sale and placement of the Funds for the Plan.

## THE PLAN

The Plan is "employee pension benefit plan[s]," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A). The relief requested in this action is for the benefit of the Plan and their participants/beneficiaries.

24. Specifically, the Plan is "defined contribution plan[s]" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

25. The Plan provides for both participant elective deferrals and employer matching contributions.

26.     Participants in the Plan are immediately vested in their contributions plus actual earnings thereon. Vesting the Company's matching contributions plus earnings thereon vest upon completion of three years of continuous service.

27.     Issues to be resolved in this action include:

(a)     whether Defendants each owed a fiduciary duty to the Plan, the Plaintiff and the remaining Plan participants;

(b)     whether Defendants breached their fiduciary duties to the Plan, the Plaintiff and participants of the Plan by failing to act prudently and solely in the interests of the Plan and the Plan's participants and Beneficiaries;

(c)     whether Defendants violated ERISA;

(d)     whether the Plan and participants in the Plan have sustained damages and, if so, what is the proper measure of relief; and

(e)     whether Morgan Keegan is liable to the Plan as a co-conspirator.

**DEFENDANTS' FIDUCIARY STATUS**

28.     During the applicable period, upon information and belief, Defendants had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets.

29.     During the applicable period, Defendants acted as fiduciaries of the respective Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

30.   ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

31.   Instead of delegating fiduciary responsibility for the Plan to external, independent service providers, Defendants chose to internalize certain vital aspects of this fiduciary responsibility, which was an unquestionable conflict of interest.

## Additional Fiduciary Aspects of Defendants' Actions/Inactions

32.   Despite Regions' and Morgan Keegan's writings and assertions to the contrary, the said two Defendants engaged in wrongful activities harmful to the Plan and were fiduciaries under the law.

33.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who act in fact as fiduciaries, *i.e.,* performed fiduciary functions. Section 3(2 I)(A)(i) of ERISA, 29 U.S.C. §1002(21)(A)(i), provides that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets. During the applicable period, Defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA.

34.   Further, ERISA mandates that pension plan fiduciaries have a duty of loyalty to a plan and its participants, which includes the duty to speak truthfully to the plan and its participants when communicating with them. A fiduciary's

duty of loyalty to plan participants under ERISA includes an obligation not to materially mislead, or knowingly allow others to materially mislead, plan participants and Beneficiaries. "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA," *Verity Corp. v. Howe,* 516 U.S. 489, 506 (1996).

35.    An ERISA participant has a right to accurate information. An ERISA fiduciary's withholding of information may give rise to a cause of action for breach of fiduciary duty. *See Jones v. Am. Gen. Life & Accident Ins. Co.,* 370 F.3d 1065, 1072 (11th Cir. 2004). Moreover, an ERISA fiduciary's duty of loyalty requires the fiduciary to correct any inaccurate or misleading information so that plan participants will not be injured. *See, e.g., Griggs v. El. Dupont de Nemours & Co.,* 237 F.3d 371, 381 (4th Cir. 2001) ("[An] ERISA fiduciary that knows or should have known that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent — especially when that misunderstanding was fostered by fiduciary's own material representations or omissions."); *Matthews v. Chevron Corp.,* 362 F.3d 1172, 1180 (9th Cir. 2004); *Birler v. Central Penn. Teamsters health & Welfare Fund,* 12 F3d 1292, 1300 (3rd Cir. 1993).

36.    During the applicable period, upon information and belief, Defendants made direct and indirect communications with the Plan's participants including statements regarding investments in the Funds. These communications included, but were not limited to, SEC filings, annual reports, press releases, and Plan documents (including Summary Plan

Descriptions ("SPDs") and/or prospectuses regarding the Plan's/participants' holdings of the Funds), which included and/or reiterated these statements.

37.    Defendants also knew or should have known that many of the Plan's participants would likely invest their retirement savings in the Funds, especially due to said Funds being recommended by one or more of Defendants.

38.    Even though Defendants knew or should have known these facts, and even though Defendants knew of the heavy investment of the Plan's assets in the Funds, they still disseminated inaccurate, incomplete and materially misleading statements Plan-wide regarding the financial condition and suitability of the Funds.

## DEFENDANTS' CONDUCT

39.    Hence, as fiduciaries of the Plan, Defendants knew or should have known that the Funds were imprudent investments for Plan assets during the applicable period as a result of, *inter alia:*

- The true nature and extent of the risk related to the concentrated securities within the Funds.

- The Funds' investment in risky, securitized debt.

- The funds in several instances were not composed of historically-defined bonds but were in  fact mutual funds of commercial paper.

- Said funds were highly concentrated in the financial sector, and not properly diversified as Defendants originally represented.

- Defendants claimed that the Funds were well diversified. Such was false.

- Much of the funds were composed of CDO's (Collateralized Debt Obligations); The Funds' prospectuses are replete with names of presumably private equity firms with commercialized debt obligations as a part of the funds. The underlying composition of The Funds was incapable of determination.

- Beginning in late August of 2007, the funds started to severely lose value due to their inferior tranches of securitized debt. The Funds are virtually worthless. The Plaintiffs therefore had notice no earlier than Fall 2007 that all the Defendants' prior representations of safety and appropriateness were false.

- Defendants should have known at inception that by over-concentrating the Funds in the riskiest portions of one sector, (the financial industry), Defendants were gambling that the financial industry would never have any reverses.

- The funds were overly invested in subprime lending of inferior grade mortgages bundled with other obligations from the credit markets as the underlying property interests in said securities. This type of investment has come to be referred to simply as "securitized debts," which collapsed. Similar funds of other investment companies remained stable or have even gained in value.

- In addition to mortgage-based securities, the funds also invested substantially in other financial markets such as collateralized equipment leases and franchise loans.

- The so-called manufactured or structured securities composing many of the Funds had not been tested according to market cycles and thus represented an unproven, insecure basis upon which to accept monies from safety-seeking 401k accounts.

- The Funds were even heavily invested in junk bonds, plus bonds which were rated BBB ("near junk bonds").

- Said investments were only thinly traded. In other words, market quotations and trade activity has not been and is not readily available.[2]

- Said securities' unavoidable characteristic is illiquidity, a trait that is blatantly adverse to the interest of the Plan's participants.

- As opposed to being the safe investments that they were represented by Defendants to be, said Funds were high risk –much riskier than appropriate for a 401k like the instant one.

## The Funds

40.    Morgan Asset Management, Inc., another subsidiary of Regions, and a division of Morgan Keegan, served as the investment advisor to the Funds. As described herein, a substantial amount of plan assets were invested in the Funds.

41.    Although the Funds were described as typical mutual funds, they were in fact invested in "exotic and illiquid asset-backed securities (and relatively little to standard high-yield corporate bonds) that have been devastated by the

---

[2] Attached hereto as Attachment A is a Consent Order entered by the State of Illinois regarding the lack of transferability, i.e. illiquidity, of the Funds.

earthquake in credit markets this year." Andrew Tanzer, *Two Morgan Keegan Funds Crash and Burn*, December 2007, available at Kiplinger.com (hereinafter citied as the Kiplinger.com article).

42. The Kiplinger.com article described the losses to the Funds as "stunning," noting that the High Income Fund plummeted 56% and the Intermediate Bond Fund fell 45%.

43. The devastating losses were caused by the Funds' heavy investment in relatively new types of manufactured or structured fixed income securities that had not been tested through market cycles and by the failure of the Funds to have previously complied with required disclosed procedures relating to the manner in which the Funds' assets were invested, the liquidity of their assets would be maintained, the lack of liquidity in the Funds' portfolios, the pricing of their assets, the valuation procedures used to price their assets, and/or the failure to disclose such breaches and failures and conditions in the Funds' portfolios that rendered them extraordinarily vulnerable to changes in market conditions, far more vulnerable than other intermediate bond and high income funds affected by the same events and conditions in the subprime and other markets in 2007.

44. As the subprime events unfolded in the fixed income markets in the summer of 2007, buyers of, including purported market-makers for, these financial instruments disproportionately (compared with their peer funds) purchased by the Funds began to disappear, as such securities became suspect even when the underlying collateral continued to pay principal and interest. This resulted in a greater supply of

such securities than a demand for such securities which in turn caused the values of all similar types of such securities to drop dramatically, an entirely foreseeable event for securities that traded in thin markets or for which market quotations were not readily available, as was the case with a significant portion of the Funds' portfolio securities.

45.    For funds such as the ones at issue in this case, such drops in aggregate asset values typically immediately translate into losses in the Funds net asset value per share. This is because the share price at which such funds buy and sell their shares is the value of the net assets of the fund, *i.e.*, the value of the assets minus the liabilities, divided by the number of outstanding shares,

46.    Due to their highly excessive investment in CDOs, the Funds performed substantially worse than their peers. Out of 439 other intermediate bond funds and 253 other high income funds, none suffered losses this severe in the same time frame.

47.    Upon information and belief, this is because no other intermediate or high-yield bond fund had invested as heavily in these structured financial instruments as did the two Funds. Indeed, on July 19, 2007, Bloomberg News quoted Jim Kelsoe, the senior portfolio manager of the two Funds, as having an "intoxication" with such securities.    Further, Bloomberg reported that a Morningstar, Inc_ analyst noted that "[a] lot of mutual funds didn't own much of this stuff' and that the High Income Fund was "the one real big exception"

48.     Neither Fund disclosed in their common prospectus that the Funds were exposed to liquidity risk: the risk that the Funds' exotic, new untested structured securities traded in a thin market and were at risk of suddenly becoming unsalable at the prices in which they were being carried on the Funds' records because the small number of market-makers might disappear, leaving the Funds with no one to buy their securities when they wanted to sell them.

49.     Upon information and belief, each of the Funds was also subject to an investment restriction which prohibited them from investing more than 25% of the Fund's total assets in the same industry.

50.     However, the Funds violated this restriction by investing more than 25% of their assets in securities comprised companies that are engaged in the mortgage loan industry and mortgage-backed securities. For example, Bloomberg reported that, as of June 30, 2007, the asset allocation of the High Income Fund was:

|   |   |   |
|---|---|---|
| • | Government securities | 0.00% |
| • | Corporate bonds | 25.09% |
| • | Mortgages | 52.32% |
| • | Preferred stock | 5.91% |
| • | Municipal bonds | 0.01% |
| • | Equity | 11.57% |
| • | Cash and other | 5.09% |

51.    Further, Bloomberg reported that, as of June 30, 2007, the asset allocation of the Intermediate Fund was:

- Government securities        0.11%

- Corporate bonds              41.65%

- Mortgages                    54.71%

- Preferred stock              2.67%

- Municipal bonds              0.00%

- Equity                       0.00%

- Cash and other               0.87%

52.    In addition to impermissible industry concentration, the Funds also suffered from an undisclosed concentration of credit risk in that the Funds' portfolios were heavily invested in structured financial instruments and in a single industry, which risk required financial statement disclosure under generally accepted accounting principles.

53.    Moreover, during the applicable period, many, if not most or all, of the structured financial instruments in which the Funds invested, did not regularly trade or were thinly traded. Such securities were, at the time they were purchased by the Funds and during the time they were held by the Funds, illiquid.

54.    The Funds' extraordinary losses in share value were not caused by economic or market forces. The events experienced by the fixed income securities markets in 2007 affected all fixed income finds but had a far greater adverse effect in the Funds

than on their intermediate and high income peers because the Funds' portfolios were significantly different than their respective peer funds. The Funds contained disproportionately large positions in the new, untested and opaque, structured financial instruments and other illiquid securities, *Le.*, securities for which market quotations ere not readily available and, therefore, could be valued only by the use of fair value pricing procedures based on estimates of value that are inherently uncertain.

55.    The disproportionate adverse effect of these events on the Funds could not reasonably have been foreseen or anticipated by Plan participants in light of Defendants' disclosures and perception created in the market place and their failure to disclose the extent to which their portfolios held securities uniquely vulnerable to these kinds of market events and the risks inherent in holding such large amounts of such securities. The disproportionate adverse effect of these events on the Funds should reasonably have been foreseen and anticipated by Defendants in view of the magnitude of illiquid securities in the Funds' portfolios and the SEC, industry and accounting guidance regarding the need for open-end funds to ensure they have liquid portfolios and the valuation difficulty/uncertainty attendant to thinly traded and illiquid securities.

56.    The Intermediate Fund failed to adhere to its investment objective of investing in intermediate maturity, investment grade bonds; failed to adhere to its investment restrictions investments in a single industry; failed to properly diversify its credit risk; and failed to invest in sufficient amounts of liquid investment-grade short-term securities to maintain the Fund's requisite liquidity.

57.    The High Income Fund failed to properly manage its illiquidity risk, failed to adhere to its investment restrictions investments in a single industry and, additionally, failed to properly diversify its credit risk.

58.    In summary, during the applicable period, the Funds heavily invested in collateralized bond obligations, collateralized loan obligations, and collateralized mortgage obligations, collectively referred to as collateralized debt obligations ("CDOs") or "structured financial instruments." These securities are usually only thinly traded, *i.e.*, market quotations are not readily available, and, based on their characteristics, are illiquid. As a consequence, the values of these securities can only be estimated, which estimated values are inherently uncertain.

## The Truth Emerges

59.    On August 30, 2007, Regions revealed that three of its bond funds managed by its Morgan Keegan division would delay filing their semi-annual reports, due to valuation issues in connection with increased shareholder redemptions. Essentially, as liquidity decreased in the mortgage-backed securities market, shareholder redemptions increased. Thus, the importance of accurate and current valuation of the net asset value of certain of Morgan Keegan's bond funds' shares increased, as well.

60.    In late 2007 and early 2008, Regions and Morgan Keegan were named in class-action lawsuits filed in the United States District Court for the Western District of Tennessee on behalf of investors who purchased shares of the Funds. The complaints alleged that the defendants therein misrepresented or failed to disclose material facts relating to the activities of the Funds.

61.    During early 2008, the problems with the Morgan Keegan bond funds worsened. In addition to the ongoing private litigation, on February 27, 2008, Regions announced that the SEC had requested information concerning certain Morgan Keegan bond funds that had suffered tremendous losses, as a result of the enormous problems in the subprime mortgage market and related securities. The Company also announced that it was replacing Morgan Keegan's CEO.

62.    Plan participants suffered as the value of the Funds plummeted. Year to date, each of the Funds has lost at least 50% of its value, the detriment of many of the Plan's participants.

## Defendants knew or should have known that the Funds were Imprudent Investments for the Plan

63.    Further, Defendants, as fiduciaries of the Plan, knew or should have known that the Funds were imprudent investments during the applicable period as a result of, *inter alia:* (a) the nature of the risk being assumed by investment in the Funds; (b) the illiquidity of certain securities in which the Funds invested; (c) the extent to which the Funds' portfolios contained securities that were illiquid or exhibited the characteristics of illiquid securities so that they were highly vulnerable to suddenly becoming unsalable at the prices at which they were being carried on the Funds' records; (d) the extent to which the values of such securities, and consequently, the net asset values of the Funds, were based on estimates of value and the uncertainty in such estimated values; and (e) the concentration of investments in a single, inherently troubled, industry.

64.    Not only was offering the tainted Funds to the Plan's participants inherently imprudent, but the deceptions relating to the Funds also rendered investment of the Plan's assets in Regions stock imprudent, as the price of Regions stock has fallen and, as a result of the emergence of the problems with the Funds (which Defendants knew or should have known), remains depressed,

65.    In addition, upon information and belief, Defendants failed to adequately review the performance of the other fiduciaries of the Plan to ensure that they were fulfilling their fiduciary duties under the Plan and ERISA.

66.    An adequate (or even cursory) investigation by Defendants would have revealed to a reasonable fiduciary that investment by the Plan in the Funds, under these circumstances, was clearly imprudent A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made different investment decisions.

67.    Because Defendants knew or should have known that the Funds were not prudent investment options for the Plan, they had an obligation to protect the Plan and their participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in the Funds.

68.    Defendants had available to them several different options for satisfying this duty, including: making appropriate public disclosures as necessary; divesting the Plan of the Funds; discontinuing further plan contributions to and/or investment in the Funds; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the

Plan; hiring independent investment managers; and/or resigning as fiduciaries of the Plan to the extent that they could not loyally serve the Plan and their participants in connection with the their acquisition and holding of the Funds.

69.    Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses resulting from the Plan's investment in the Funds.

70.    In addition, upon information and belief, Defendants failed to adequately review the performance of the other fiduciaries of the Plan to ensure that they were fulfilling their fiduciary duties under the plan documents and ERISA. Defendants also failed to conduct an appropriate investigation into whether the Funds were prudent investment vehicles for the Plan and, in connection therewith, failed to provide Plan participants with factual information regarding the Funds' deep-rooted problems so that participants could make informed decisions regarding whether to include the Funds in their Plan accounts.

71.    The SEC filings, related Company statements and releases and Funds prospectuses and related descriptions issued during the applicable period were inaccurate, incomplete and materially misleading, causing the Plan's participants to purchase, and to hold and maintain, investments of their plan accounts in the Funds.

72.    These statements, prospectuses, their related press releases, and substantially similar SEC filings and press releases issued during the applicable period were inaccurate, incomplete and materially misleading in that they failed to properly inform the Plan's participants of the Funds inherent problems. These statements

were made with the implicit knowledge that the Plan's participants would rely upon such information in determining whether to maintain investment in the Funds.

73.    As a result of the huge drop in the value of the Funds, the Plan's participants, the retirement savings of which suffered unnecessary and unacceptable losses.

## CLAIMS FOR RELIEF UNDER ERISA

74.    At all relevant times, Defendants were and acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

75.    ERISA § 502(a)(2), 29 U.S.C. §1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. §1109.

76.    ERISA § 409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

77.    ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing*

*benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence* under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, (Emphasis added).

78.    These fiduciary duties under ERISA § 404(a)(1)(A) and (B) are referred to as the *duties of loyalty, exclusive purpose and prudence* and are the "highest known to the law," They entail, among other things:

(a)    The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan;

(b)    A duty to avoid conflicts of interest and to resolve them promptly when they occur, A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor;

(c)    A duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

79.    ERISA § 405(a), 29 U.S.C. § 1105 (a), "Liability for breach by co- fiduciary," provides, in pertinent part, that:

> "...in addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (A) if he participates

knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (B) if by his failure to comply with section 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (C) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

80.    Plaintiff therefore brings this action under the authority of ERISA §502(a)

for plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising

out of the breaches of fiduciary duties by the Defendants for violations under ERISA

§404(a)(1) and ERISA §405(a).

## COUNT I

### Failure to Prudently and Loyally Manage the Plan's Assets
### (Breaches of Fiduciary Duties in Violation of ERISA § 404 and § 405 by All Defendants)

81.    Plaintiff incorporates the allegations contained in the previous

paragraphs of this Complaint as if fully set forth herein.

82.    At all relevant times, as alleged above, all Defendants were fiduciaries within

the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that they exercised

discretionary authority or control over the administration and/or management of

the respective Plan or disposition of the Plan's assets.

83.    Under ERISA, fiduciaries who exercise discretionary authority or control

over management of a plan or disposition of a plan's assets are responsible for ensuring

that investment options made available to participants under a plan are prudent.

Furthermore, such fiduciaries are responsible for ensuring that assets within the plan

are prudently invested. Defendants were responsible for ensuring that investment of the Plan's assets in the Funds was prudent and that such investment was consistent with the purpose of the Plan. Defendants are liable for losses incurred as a result of such investment being imprudent.

84.    A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

85.    Defendants breached their duties to prudently and loyally manage the Plan's assets. During the applicable period these Defendants knew or should have known that the Funds were not suitable and appropriate investments for the Plan as described herein. Investment in Regions stock and/or the Funds during the applicable period clearly did not serve the Plan's purpose of helping participants save for retirement, and in fact caused significant losses/depreciation to participants' retirement savings. During the applicable period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to protect the Plan's participants from the inevitable losses that they knew would ensue as the non-disclosed material problems, concerns and business slowdowns took hold and became public, and as the Funds' suffered tremendously from mismanagement

and excessive liquidity risks.

86.    Defendants also breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the other Defendants' failure to disclose crucial information.

87.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

88.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the respective Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

### Failure to Provide Complete and Accurate Information to the Plan's Participants and Beneficiaries (Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 of MESA by all Defendants)

89.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

90.    At all relevant times, as alleged above, Defendants were fiduciaries of the Plan within the meaning of ER1SA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Consequently, they were bound by the duties of loyalty, exclusive purpose and prudence.

91.    At all relevant times, the scope of the fiduciary responsibility of the above-listed Defendants included plan-related communications and material disclosures.

92.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the plan with complete and accurate information, and to refrain from providing inaccurate or misleading information, or concealing material information, regarding the plan's investment options, such that participants can make informed decisions with regard to the prudence of investing in such options made available under the plan. This duty applies to all of the Plan's investment options, including the Funds.

93.    These Defendants knew that investment in the Funds carried risk not associated (or explained) with that type of investment vehicle. These inherent risks made the Defendants' duty to provide complete and accurate information particularly important.

94.    These Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding the dangerous positions of the Funds. These failures were particularly devastating to the Plan and their participants—losses in these investments had a significant impact on the value of participants' retirement assets.

95.    These actions and failures to act were uniform and caused the Plan, and/or the participants and beneficiaries of the Plan, to continue to make and maintain substantial investments in the Funds in the Plan at a time when these Defendants

knew or should have known that the Plan's participants and beneficiaries (and non-defendant fiduciaries) did not have complete and accurate information concerning their investments. Plaintiff and the other Plan participants relied to their detriment on these Defendants' incomplete, inaccurate and materially misleading statements regarding the performance, risk profile and future health of the Funds.

96.    Defendants in this Count are also liable as co-fiduciaries  because (1) they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding the Funds despite knowing of their breaches; (2) they enabled such conduct as a result of their own failure to satisfy their fiduciary duties; and (3) they had knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, yet did not make any effort to remedy the breaches.

97.    Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant of the Plan that results in harm to the participant, the participant is presumed as a matter of law to have relied upon such misrepresentations and omissions to his detriment. Here, the above-described statements, acts and omissions of the Defendants constituted misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in the Funds and Company stock and were material to any reasonable person's decision about whether or not to invest or maintain any part of their invested assets of the Plan in the Funds. Plaintiff and the other Plan participants are therefore presumed to have relied to their detriment on the misleading statements, acts,

and omissions of the Defendants as described herein.

98.    As a consequence of these Defendants' breaches of fiduciary duty, the Plan suffered significant losses. If the Defendants had discharged their fiduciary duties to prudently manage and invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investments.

99.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) *and* ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the respective Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT III

### Breach of Duty to Avoid Conflicts of Interest
### (Breaches of Fiduciary Duties in Violation of ERISA § 404 and 405 by all Defendants)

100.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

101.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § .3(21)(A), 29 U.S.C. § 1002(21)(A). Consequently, they were bound by the duties of loyalty, exclusive purpose and prudence.

102.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his duties with respect to a plan solely in the

interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

103.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia:* failing to timely engage independent fiduciaries who could make independent judgments concerning the Plan's investments in the Company's own securities and Funds; and by otherwise placing their own and the Company's interests above the interests of the participants with respect to the Plan's investment in the Company's securities and the Funds.

104.    As a consequence of Defendants' breaches of fiduciary duty, the Plan suffered significant losses. If Defendants had discharged their fiduciary duties to prudently manage and invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided_ Therefore, as a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investments.

105.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the respective Plan caused by their breaches of fiduciary duties alleged in this Count

## COUNT IV

### Failure to Adequately Monitor Other Fiduciaries and Provide Them with Accurate Information

106.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

107. At all relevant times, as alleged above, Defendants were fiduciaries of the respective Plan, within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

108. At all relevant times, as alleged above, the scope of the fiduciary responsibility of Defendants, included the responsibility to appoint, evaluate, and monitor other fiduciaries including the members of any committees charged with management of the Plan.

109. The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. In this case, that means that the monitoring fiduciaries had the duty to:

(a) Ensure that the monitored fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of the Plan's participants;

(b) Ensure that the monitored fiduciaries are provided with adequate financial resources to do their job;

(c) Ensure that the monitored fiduciaries have adequate information to do their, job of overseeing the Plan's investments;

(d) Ensure that the monitored fiduciaries have ready access to outside, impartial advisors when needed;

(e) Ensure that the monitored fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)     Ensure that the monitored fiduciaries report regularly to the Company and/or the Director Defendants. The Company and/or Director Defendants must then review, understand, and approve the conduct of the hands-on fiduciaries,

110.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of a plan's assets, and must take prompt and effective action to protect a plan and its participants when they are not. In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage a plan and a plan's assets.

111.    Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the monitored fiduciaries had access to knowledge about the Funds' problems, as described above, which made the Funds an imprudent retirement investment for Plan participants' retirement savings, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment of the retirement savings of rank and file employees in the Funds, investments that were imprudent and subject to inevitable and significant depreciation. Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (i) imprudently allowing the Plan to continue offering the Funds as investment alternatives for the Plan and (ii) continuing to invest the assets of the Plan in the Funds when it no longer was prudent to do so.

Despite this knowledge Defendants failed to take action to protect the Plan, and concomitantly the Plan's participants, from the consequences of these fiduciaries' failures.

112.    In addition, Defendants, in connection with their monitoring and oversight duties, were required to disclose to the monitored fiduciaries accurate information about the financial condition of the Funds that they knew or should have known that these Defendants needed to make sufficiently informed decisions. By remaining silent and continuing to conceal such information from the other fiduciaries, these Defendants breached their monitoring duties under the Plan and ERISA.

113.    Defendants are liable as co-fiduciaries because they knowingly participated in the each other's fiduciary breaches as well as those by the monitored fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

114.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly the Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investments.

115.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the respective Plan caused by their breaches of fiduciary duties alleged in this Count.

## CAUSATION

116.    The Plan suffered significant losses because substantial assets of the Plan were imprudently invested, or allowed to be invested by Defendants, in the Funds during the applicable period, in breach of Defendants' fiduciary duties. These losses were reflected in the diminished account balances of the Plan's participants.

117.    Defendants are responsible for losses caused by participants' failure to exercise voluntary diversification options because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  By failing to apprise participants of the problems with the Funds as further described *infra*, Defendants misrepresented the soundness of the Funds as investment vehicles. As a consequence, participants did not exercise independent control over their investments in the Funds and Defendants remain liable under ERISA for losses caused by such investment.

118.    Had the Defendants properly discharged their fiduciary and/or co-fiduciary duties, the Plan and participants would have avoided a substantial portion of the losses that they suffered through their continued investment in the Funds.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

119.    As noted above, as a consequence of the Defendants' breaches, the Plan suffered significant losses.

120.    ERISA § 502(a), 29 U.S.C. § 1132(a) authorizes a plan participant to bring a

civil action for appropriate relief under ERISA § 409, 29 § 1109. Section 409 requires "any person who is a fiduciary . . who breaches any of the . . duties imposed upon fiduciaries ... to make good to such plan any losses to the plan . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate ."

121.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the Plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been properly administered.

122.    On behalf of the Plan, Plaintiff and all applicable Plan participants are therefore entitled to relief from Defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA § 409(a) and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 US.C, § 1132(g) and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

123.    Each Defendant was a fiduciary with respect to one or more of the Plan and is jointly liable for the acts of such other Defendants as a co-fiduciary.

## SECTION 404 c DEFENSE INAPPLICABLE

124.    The Plan suffered losses, and the Plaintiff and the other participants suffered losses, because substantial assets in the Plan were invested in the Funds during the applicable period in violation of the Defendants' fiduciary duties.

125.    Section 404(c) provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions, but not for liability for the selection of imprudent investment options for the Plan,, In order for § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions. In addition, § 404(c) only applies if participants are informed that "the Plan is intended to constitute a plan described in § 404(c) and [the regulations], and that fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participants or Beneficiary." 29 C.F.R. § 2550.404c1 (b)(2)(B)(1)(i)

126.    As alleged above, Defendants failed to provide participants with complete and accurate information regarding the Funds. Accordingly, participants failed to exercise the requisite independent control over their investment in the Funds in the Plan.

127.    The Defendants' liability to the Plan, Plaintiff and the Plan participants for relief stemming from the Plan's imprudent investments in the Funds is established upon

proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the applicable period, without regard to whether or not the participants relied upon statements, acts, or omissions of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.    A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants of the Plan;

B.    A Declaration that the Defendants, collectively and separately, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 104(c)(1)(B);

C.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

F.    An Order that Defendants allocate the Plan's recoveries to the

accounts of all participants who had any portion of their account balances invested in shares of the Funds maintained by the Plan in proportion to the accounts' losses attributable to the decline in the value of the Funds;

G.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H.    An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

I.     An Order for equitable restitution and other appropriate equitable

monetary relief against the Defendants.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

DATED:       August 11, 2009              Respectfully submitted,


Charles M. Thompson
Ala. Bar No.:  ASB-6966-P77C
**CHARLES M. THOMPSON, P.C.**
5615 Canongate Lane
Birmingham, AL 35242
cmtlaw@aol.com
Telephone:  205-995-0068
Facsimile:    205-995-0078

**COUNSEL FOR PLAINTIFF**

Serve Defendants by Certified Mail at:

Regions Bank
Trust Department
60 Commerce Street
Montgomery, AL 36104

Qualico Steel Company, Inc.
7797 E. State Highway 52
Enterprise, AL 36330

Morgan Keegan & Company, Inc.
50 North Front Street
Morgan Keegan Tower
Memphis, TN  38103